UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD H. CRADDOCK;
PAMELA CRADDOCK;
JACOB BRADLEY, a minor,
by PAMELA CRADDOCK, his
Next Friend; SAMANTHA
BRADLEY, a minor, by PAMELA
CRADDOCK, her Next Friend; and
RICHARD H. CRADDOCK, JR.,
a minor, by PAMELA CRADDOCK,
his Next Friend,

      Plaintiffs,

v                                     Case No. 1:02CV0551
D/SGT. STEVEN D. RAU,
TPR. MITCHELL DYER,
D/TPR. ANGEL D. OUWINGA,          HON. GORDON J. QUIST
SGT. MARK S. DAVIS,

      Defendants.

---

Frederick J. Boncher (P23072)
Catherine M. Sullivan (P40699)
SCHENK & BONCHER
Attorneys for Plaintiffs
601 Three Mile Road, N.W.
Grand Rapids, MI 49544
(616) 647-8277

Mark E. Donnelly (P39281)
Assistant Attorney General
Attorney for Defs. Rau, Dyer, & Ouwinga
Public Employment, Elections
& Tort Defense Division
P.O. Box 30736
Lansing, MI 48909-8236
(517) 373-6434

Steven F. Stapleton (P51571)
PLUNKETT & COONEY, P.C.
Attorneys for Defendant Sgt. Mark Davis
333 Bridge Street, N.W., Suite 530
Grand Rapids, MI 49504
(616) 752-4611

---

# PLAINTIFFS' RESPONSE TO DEFENDANT DAVIS' MOTION FOR SUMMARY JUDGEMENT

## I.    FACTS.

On November 1, 2001 Richard Craddock was home with his three minor children. Ricky was ten months old, Samantha was six, and Jacob was eleven at the time. Mr. Craddock had one of the children in his lap on the floor so his son Jacob went to answer the door when someone was heard to be knocking. The police charged in, apparently with a warrant. As they did so, Mr. Craddock set the infant down on the floor in front of him and began to get up and move away from the charging officers. (Officer Vogt and Officer Rau).

Mr. Craddock jumped up on the couch and was pushed into the wall almost immediately. Handcuffs were put on one of his hands behind his back while his other hand supported his weight against the wall.    (**Exhibit A** - Craddock deposition, p 43). Mr. Craddock yelled a request that his children be removed from the room. (**Exhibit A** - p 42). Officer Rau ordered Mr. Craddock to give Officer Vogt his other arm or he would shoot the Craddock family dog which was also in the room. (**Exhibit A** - p 43). During this time, Mr. Craddock was concerned with getting the children out of the room though and did not comply immediately. (**Exhibit A** - p 43). Then Officer Rau shot the dog, fatally as it turned out, in front of the children. (**Exhibit A** - p 44). Mr. Craddock then complied with the prior request for his other arm. (p 45). Mr. Craddock was not armed at any point. He did not make even a furtive movement of escape after his initial movements away from the officers as they stormed in.

Mr. Craddock was then led outside and was understandably upset, both that the dog had been shot and the events had taken place in front of his children. Still, he was under control. (**Exhibit A** - p 45). Officer Davis and Mr. Craddock exchanged loud accusations

back and forth, Mr. Craddock questioning what the police were going to do for care for the dog and threatening to contact animal rights groups and child advocacy groups and Officer Davis commanding Mr. Craddock to "shut the fuck up, or he would shoot the dog again." (**Exhibit A** - p 67).  Then Mr. Craddock insulted Officer Davis and told him to speak to his face.  Officer Davis appeared extremely agitated, "with teeth gritted and his face all tore up" (**Exhibit A**, p 68).    Officer Davis then faced Mr. Craddock who exclaimed that he was happy that Officer Davis had approached him so he could be picked out in the courtroom later.  (**Exhibit A** - p 68).  Officer Davis then accused Mr. Craddock of kicking him in the groin[1] and Mr. Craddock was immediately taken to the ground by other officers.  (**Exhibit A** - p 69).[2]  Mr. Craddock (still handcuffed) was then hog-tied with zip ties and ankle shackles.  (**Exhibit A** - p 70).  Then, while on his stomach on the ground Mr. Craddock was promptly administered a number of punches to the face by Officer Davis.  (**Exhibit A** - pp 70-72).  Officer Davis has admitted punching Mr. Craddock in the face at this point. (**Exhibit C** - Davis deposition, p 30).  Officer Vogt held Mr. Craddock's neck down to facilitate the punches by Officer Davis.  (**Exhibit A** - pp 71-73).  Mr. Craddock's nose was broken by the first punch.  (**Exhibit A** - pp. 106-107).  The blows did not stop until Mr. Craddock played dead.  (**Exhibit A** - p 74). (See also **Exhibit D** - Photographs of Mr. Craddock before the incident and after).   Then Mr. Craddock was grabbed by the hair and

---

[1]Mr. Craddock denies that any such kick ever took place. (**Exhibit E** - Trial Transcript, Vol. IV, p 133).  Furthermore, even if one finds Officer Davis' account credible that the kick did occur, it should be noted and is undisputed that Mr. Craddock was not wearing shoes at this point. (**Exhibit E** - Trial Transcript, Vol. IV, p 128).

[2]Officer Dyer also admitted to punching Mr. Craddock in the head with his closed fist (at the time he was being tackled) (**Exhibit B** -- Dyer Deposition, p 21).

his face was smashed into the ground a number of times. (**Exhibit A** - pp 75-77).

As a result of the incident, Mr. Craddock and his wife, Pamela, and the children brought a civil suit against the individual officers involving multiple claims including violations of civil rights, intentional infliction of emotional distress, assault and battery and civil conspiracy. Defendant Officer Davis has brought a motion for summary judgment to which Plaintiffs herein respond.

## II.     LAW AND ARGUMENT.

### A.     Standard of Review.

Summary judgment is proper under Rule 56(c) if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact (FRCP 56(c)). In considering a motion for summary judgment, the facts are to be considered in a light most favorable to the non-moving party, and all justifiable inferences are to be drawn in favor of the non-movant. *Schaffer v A.O. Smith Harvestore Products, Inc.*, 74 F.3D 722, 727 (6th Cir. 1996).

### B.     Claims Under the Fifth and Fourteenth Amendments.

Defendant points out that claims under the Fifth Amendment are unnecessary as the Fourteenth Amendment incorporates the Fifth Amendment due process protections against state actors. Therefore, Plaintiffs agree that the Fifth Amendment claims should be removed from the case.

Defendant claims that the Fourteenth Amendment Claims are properly brought

-4-

under the Fourth Amendment.  Plaintiff also concurs with this analysis and would agree to remove claims under the Fourteenth Amendment from the case.

### C.     Claims Under the Eighth Amendment.

Discovery has shown that no Eighth Amendment claims are ripe also.  Such claims do not arise until after a conviction as cited by Defendant and Plaintiffs' claims stem from incidents which occurred during the arrest of Mr. Craddock for the most part.

### D.     Civil Conspiracy Claims Under Federal and Michigan State Law.

As Defendant notes, a civil conspiracy (under federal law) is an agreement between two or more persons to injure another individual by an unlawful action. (*Collyer v Darling*, 98 F.3d 211,229 (6th Cir. 1996).  It must be shown that a plan existed, that there was a shared conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that resulted in injury. (*Hooks v Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Under Michigan law, proof of a civil conspiracy has essentially the same requirements, minus proof of an overt act.  (See *Fenestra, Inc. v Gulf American Land Corp.*, 377 Mich 565, 593 (1996) stating that civil conspiracy requires proof of a concerted action by a combination of two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means.)  Civil conspiracy may be proven in either forum by circumstantial evidence and inference from the facts at hand. (See *Temborius v Slatkin*, 157 Mich App 587, 600 (1986), *Maggiore v J.C. Bradford*, 310 F.2d 519, 521 (6th Cir.1962).[3]

---

[3]Defendant insinuates a higher standard citing the *Temborius* case when it states that "a formal agreement must be proven." (See Defendant's Brief at p 9).  However,

The facts in this case evidence such a conspiracy to beat Mr. Craddock. Specifically, the facts show that the officers at the scene worked together to hold and restrain Mr. Craddock and then beat him in retaliation for the alleged kick to the groin of Officer Davis. The additional restraining of Mr. Craddock or the punches to his face both meet the overt act element of the federal conspiracy standard. It is undisputed that Mr. Craddock had been handcuffed before this alleged kick and was being held by the officers. (See **Exhibit A** - Craddock deposition, pp 50-52; **Exhibit C** - Davis deposition, p 25). In fact, taking the evidence in the light most favorable to Plaintiff, he was also essentially hog-tied by a number of officers, and while prone and exposed on his face on the pavement he was held down by Officer Vogt while being punched by Officer Davis. (**Exhibit A** - p 70). An excerpt of Mr. Craddock's deposition testimony evidences the implication that the officers conspired to beat him for his supposed transgression of kicking officer Davis in the groin as follows:

> Q:    And what position are you when you're on the ground?
>
> A:    Face down on my stomach.
>
> Q:    And what happens next? Is anybody saying anything?
>
> A:    Nothing that I recall. Some officers are grabbing my feet, I don't know if its officers or officer, and they're pulling my feet up towards my butt. I'm telling the other officer, Hey, I didn't kick him. I don't know what he's talking about; I didn't kick him. And then Trooper Vogt comes up and I figured I might be able to, you know, talk some sense to him. I was like, Hey, I didn't kick this guy.

---

the next sentence of that case reads, "Direct proof of agreement is not required, however, nor is it necessary that a formal agreement be proven." (*Temborius* at 600).

Then I see Rau coming from the back of the police cruiser with plastic straps and they zip tie my ankles up. They put a rope between the zip ties on my ankles and the cuffs, and then Vogt climbed down and forces my neck to the pavement, puts my head out here (indicating) so I can't move my head, and then someone standing over top of me yells, Why did you kick me in the balls, and then punches me in the face.

Q:      Okay.  But you don't know who said that?

A:      I still assume that was Davis, but, no, I didn't see the face that was attached to the fist.

Q:      Okay.  Well, you had heard him talking to you just seconds earlier?

A:      Right.

Q:      I mean, did you recognize the voice as his or–

A:      Yes, I would recognize that to still be his voice.

Q:      So you believe it was Davis that said that to you?
A:      Yes.

Q:      And then you got hit – punched in the face?

A:      Punched in the nose.

Q:      Do you know who did that?

A:      No

Q:      Did Trooper Vogt at that time?  Did he still have a hold of your neck?

A:      Yes, Trooper Vogt still had my neck pinned down.

(**Exhibit A** - Craddock Deposition, pp 70-71).

Furthermore, Officer Davis has expressly admitted to punching Mr. Craddock in the face as Mr. Craddock testified.  The following is an excerpt from his deposition:

-7-

> Q:   At that point he was taken to ground by some of the officers?
>
> A:   Yes.
>
> Q:   Were you involved in that initially?
>
> A:   No.
>
> Q:   After he was taken to the ground, you punched him twice in the face with a closed fist?
>
> A:   Yes.
>
> Q:   Could it have been more than twice?
>
> A:   No.
>
> Q:   He was still handcuffed behind his back?
>
> A:   Yes.

(**Exhibit C**, pp 29-30).

Then, following the punching and still while handcuffed and hog-tied, Officer Vogt ostensibly repeatedly slammed Mr. Craddock's face into the pavement on which he had been laid as testified to by Mr. Craddock as follows:

> A:   Trooper Vogt is on my neck, applying pressure.  My head is against the pavement, my forehead is against the pavement, my chin is up into my chest...
>
> ***
>
> Q:   You have now scraped your forehead against the pavement to try to bury your head.  Then what happens?
>
> A:   Umm, then the officer grabs me by my hair and physically lifts me up off the ground.
>
> ***

-8-

A:   As he brings me up to like the top of his lift, I feel that
     he's going to try to force me back down.   I'm
     anticipating this.  I know what's coming, so I lock my
     body in the other direction so that I'm more like rocking
     towards the ground.

Q:   Was that your intent, to resist arrest?

A.   No.

Q:   Okay.

A.   Umm, and take the blow on the chin as my face smacks
     the pavement.  He lifts my head again, comes down
     again.  This time, I have to pull my head in because
     now he's kind of like figured out what I'm tryin' to do,
     you know, to resist his –

Q:   So you hit the pavement twice now?

A:   Yes.

Q:   What happens then?

A:   He did this about four or five times.  Maybe more like
     five or six.

Q:   Did you pass out?

A:   No. But I was in a lot of pain. I was

Q:   Were you screaming?

A:   Yes.

Q:   Screaming obscenities at the officer?

A:   No. I was screaming in pain.

(**Exhibit E** - Trial Transcript, Vol. IV, excerpts from pp 148-151).

This testimony more than suffices to meet the elements of conspiracy under either

the federal or state standard.  The evidence shows that the officers worked collusively to

render Mr. Craddock completely defenseless, then position him, and lastly hold him while potentially deadly blows to his face were repeatedly and systematically administered and followed up by smashing his head into the pavement numerous times.  Officer Davis is clearly liable by taking part in this scheme to injure Plaintiff by hitting Mr. Craddock while Office Vogt held him down.

### E.      Intentional Infliction of Emotional Distress (IIED).

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. (*Duran v Detroit News, Inc.*, 200 Mich. App. 622 (1993).  The claim against Officer Davis in this regard is sufficient to withstand summary judgment as it meets all four elements.[4]

(1)     **Extreme and Outrageous:** The conduct by Officer Davis was extreme and outrageous that Mr. Craddock was subjected to repeated blows to the face while laying prone and completely restrained on the pavement and the testimony cited in this brief establishes those facts.

(2)     **Intent:**  The fact that Officer Davis admits to striking Mr. Craddock in the face with a closed fist while he was bound and defenseless provides the needed evidence of intent to inflict injury.

(3)     **Causation:**  It is clear from Mr. Craddock's testimony that his nightmares

---

[4]Plaintiff recognizes that the claim by the children for intentional infliction of emotional distress cannot be directed at Officer Davis directly as he never encountered the children.  A claim against Officer Davis could be created through the liability-spreading principles of civil conspiracy.

began after and as a result of their actions, thereby establishing causation.

Q:   Tell me about the constant nightmares that you have.
     When did those start?

A:   From the day that this happened.

Q:   And do you have them every night?

A:   Not so much anymore. They're starting to fade out, but,
     I don't know, at lest once a week.

Q:   You still have them at least once a week?

A:   Yeah.

Q:   But there was a time that you had them every single
     night?

A:   Every single night.

Q:   Did you have nightmares prior to this incident about
     being arrested by the police or having the police track
     you down?

A:   No, sir.

**(Exhibit A** - Craddock deposition, pp 14-15).

(4)   **Severe Emotional Distress:**  Mr. Craddock has admitted that the beating

caused him severe emotional distress in the form of nightmares every night

until recently.  Exchange on the subject indicating Mr. Craddock's severe

emotional distress are as follows:

a.   Q:   Okay, Now you testified earlier that your nightmares
          had kind of subsided a little bit.  You know, where you
          were having them every night and now it's only about
          once a week, right?

     A:   Yeah. **(Exhibit A** - p 48).

b.    [referred to the events of his arrest] [It's] my waking thought...my thought before I go to sleep...my nightmare." (**Exhibit E** - Trial Transcript, Vol. IV, p 167).

c.    Q:    Correct me if I'm wrong, but can we assume that what happened to you on November 1, 2001 was traumatic?

      A:    Very.

(**Exhibit F** - Trial Transcript, Vol. V, p 28).

The fact that he has not been seeing a psychologist is not important. He is currently in prison so he is not able to seek private counseling and/or pay for it. Michigan courts have found that it is not necessary for a plaintiff to show that he has actually sought treatment for the requisite emotional distress for an IIED claim to be sustained. (*McCahill v Commercial Union Ins. Co.*, 179 Mich. App 761 (1989). Mr. Craddock has had to deal with the emotional scars of being beaten on his own. The excerpts above clearly indicate that sufficient evidence exists for a jury to infer that Mr. Craddock has been subjected to severe emotional distress.

### F.    Fourth Amendment Claim.

Plaintiff also alleges violations of his constitutional right to be free from excessive force utilized by the police.[5]  The law is clearly established that "[i]f the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest

_____

[5]Defendant initially states that because Plaintiff was arrested by way of a warrant that the officers had proper authority to arrest Mr. Craddock and therefore there was no Fourth Amendment violation in that regard.  Plaintiff agrees that discovery has not yielded any evidence to support a violation of the Fourth Amendment in terms of authority to arrest.

or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Phelps v Coy*, 286 F. 3d 294, 299 (6th Cir. 2000) citing *Graham v Connor*, 490 U.S. 396, 395 (1989). "That standard requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interest in effecting the seizure." *Phelps* at 299. This standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Phelps* at 299. Courts should also take into account, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396.

Defendant asserts that the Fourth Amendment claims of excessive force should be dismissed for lack of factual support. Even a blind and complete adoption of the facts as asserted by the officers and a complete dismissal of Mr. Craddock's version of the events would not allow such a conclusion. As noted above, in the Defendants' least damaging edition of the events, Mr. Craddock was punched repeatedly while on the ground and handcuffed with numerous officers on top of him and/or around him. This is their *best* scenario. Taking the facts in the light most favorable to Mr. Craddock, as set forth above, he was also hog-tied by his hands and legs in addition to being handcuffed behind his back and held in position to receive the blows. In such a compromising position, tightly bound by all four limbs together and face-down, Mr. Craddock could not pose a significant threat to anyone nor could he attempt to run away, or even crawl away for that matter. He was at the officers' mercy. However, it is at this time that he is repeatedly punched in the face

and slammed face-first into the pavement.  Given his zero risk of flight and resistance, this force is clearly unreasonable and outside of the deferential bounds afforded to police officers in pursuing their duties.

Defendant tries to find support for its position by citing to a version of the continuum of force standards that states that an officer may use "hared empty hand techniques" when confronted with "active aggression" defined as including "advancing, challenging, and kicking." (Defendant's Brief at footnote 5).  Presumably, Defendant is alluding to his testimony that Mr. Craddock was kicking around when he was handcuffed on the ground as proper grounds for repeatedly punching him in the face.  (See **Exhibit C** - Davis deposition at p 33 stating, "he was kicking at people.")   However, summary motions require that the court look at the facts most favorable to the non-moving party, and Mr. Craddock testified in the following manner:

> Q:   What happens once you are taken to the ground, Richard?
>
> A:   Umm, I feel officers grabbing my legs, putting them up behind my back.
>
> Q:   Were you resisting?
>
> A:   No. No. Absolutely not.
>
> ***
>
> Q:   When they took you down, could you tell whether or not you received any injuries at that point?
>
> A:   Yes.
>
> Q:   Did you?
>
> A:   No.

-14-

> Q:    Were you struggling?

> A:    No.

(**Exhibit E** - Trial Transcript, Vol. IV, pp 133-134)

Thus, Defendant Davis' actions in punching Mr. Craddock in the face are not appropriate even given the strict reading of the version of the continuum of force that Defendant relies upon.

Defendant also infers that expert Dr. Kirkham would sanction the use of force by Officer Davis. Nothing is further from the truth. To the contrary, he characterizes Officer Davis' admitted actions of punching a handcuffed man in Mr. Craddock's position as:

> [G]ross violations of what I represent to you are standard police defensive tactics and would be firing offenses in virtually any police department I'm familiar with. They are criminally actionable as well. You're talking about agg battery here.

(**Exhibit G** - Dr. Kirkham deposition, p 39).

Dr. Kirkham opined further stating:

> I don't care if he was trying to grab your groin, kicked you in the groin, you don't hit a handcuffed prisoner in the head like this. Go again to Michigan, the Grand Rapids exemplar we referred to, you know, you can kill someone doing that. So it's blatantly excessive force. It's acknowledged blatantly excessive force here. I mean he acknowledges doing it. He says I was trying to control him. You've got a plethora of other control means. You've got multiple people present who are presumably trained in things like pressure point controls. You can take the fingers of your hand and just press them into the interorbital nerve in the head, neck, or hypoglossal nerve, or the mandibular joint. Painful. Hurts like hell. Isn't going to injure anybody. You're not going to wind up looking like you went five rounds with Mike Tyson.

> ***

> [Y]ou've got multiple officers present. He isn't going anywhere.

-15-

He's on the ground. He's handcuffed. And it's just totally improper to, in terms of any, any reading of the principles of use of force that we've been talking about here to hit a handcuffed prisoner. In most departments you'd be fired for that or demoted and severely reprimanded.

Q:   Is it your testimony that hitting someone in the face with a closed fist is use of deadly force?

A:   Yes, that is potentially deadly force and again, I, just off the top of my head –

Q:   Where do you get that from, what's your authority for saying that's deadly force?

A:   It's multifold. It is first in my experience I have seen people killed from head blows in my examination of police incidents over the years. People die. It's only in John Wayne movies that people get up and walk off. Head blows are dangerous. You've got the brain, you've got all kinds of injuries that can occur...

(**Exhibit G** - excerpts from pp 57-59).

Next Defendant Davis asserts that the actions of slamming Mr. Craddock's head into the ground have no bearing on his individual liability. However, Officer Davis conveniently forgets the principles of liability by conspiracy. Conspiracy is a legal tool by which co-conspirators are held liable for the wrongful acts of the others involved in the conspiracy. (See *Wilson v Continental Development Co.*, 112 F. Supp.2d 648 (1999) citing *Fenesra, Inc. v Gulf American Land Corp.*, 377 Mich 565 (1966)). Reviewing that the facts evidence a collective effort by the officers present including Officer Davis to completely restrain Mr. Craddock then beat him up while defenseless, Officer Davis should also be liable for the act of slamming Mr. Craddock's face into the pavement repeatedly after Officer Davis had bashed Mr. Craddock's face in with his fist. Defendant also argues liability is avoided for him because Mr. Craddock has been unable to identify him as the

person who punched him. This is ridiculous as Officer Davis has admitted that he was the one who punched Mr. Craddock. (**Exhibit C** - Davis deposition, p 30).  Clearly excessive force was utilized in this arrest.

### G. Qualified Immunity

The standard for qualified immunity is firmly established and is concisely stated as follows:, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (Harlow v Fitzgerald, 457 U.S. 800, 818 (1982)). A three part test assures that this standard is analyzed properly and requires the court to ask (1) whether a constitutional violation occurred; (2) whether the right that was violated was a clearly established right of which a reasonable person would have known; and (3) whether sufficient evidence exists to indicate that the official's actions were objectively unreasonable in light of the rights established. (Williams v Mehra, 186 F.3d 685, 691 (6th Cir. 1999)).

As set forth above, Mr. Craddock's right to be free from excessive use of force was violated.  He was punched in the face, and smashed to the pavement repeatedly while restrained and face down on the pavement. The right at issue, the right to be free from use of excessive force under the Fourth Amendment has been clearly established. (_Graham v Connor_, 490 U.S. 386, 392-93 (1989)).  Lastly, the officers' actions were objectively unreasonable. Analysis of two extremely similar 6th Circuit excessive force cases is helpful at this point.

-17-

In _Phelps v Coy_, 386 F.3d 295 (2002), police officers were arresting Mr. Phelps and asked him to take off his socks and shoes so they could see if he had anything hidden there. _Phelps_ at 297. Mr. Phelps was handcuffed at that point. As he lifted his leg, an officer (Coy) interpreted the action as an attempted kick of a fellow officer and tackled Mr. Phelps, landing on top of him. _Phelps_ at 297. Officer Coy told Mr. Phelps not to kick at an officer and hit him twice in the face. He then banged Mr. Phelps' face into the ground repeatedly, according to Plaintiff's version of the facts. _Phelps_ at 297. The district court found that "There is no evidence, while in that position, [Phelps] posed a threat to Coy or to any other officer." The Court of Appeals affirmed, stating that on those facts and giving the officers their due deference, "there was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was." _Phelps_ at 301.

The present case is very similar, but even more egregious. There are allegations of a kick and then Mr. Craddock was taken to the ground and had, in his case, not one, but at least three or four officers on top of him (**Exhibit H** -- Trial Transcript, Vol. III, pp.124-125). Likewise, Mr. Craddock was then punched in the face (not only by his own assertions but by defendant admissions). His head was then bashed into the pavement. All of this took place while he was handcuffed (according to admissions by the officers). By Mr. Craddock's testimony he was also hog-tied at that point. Furthermore, the officers' testimony in this case makes no mention of any attempts to flee. There is no evidence suggesting that either Mr. Phelps or Mr. Craddock were threatening others or posed a threat to others. In neither case was there evidence that the arrestees were armed, had

-18-

any reasonable means of escape, or made any attempt to flee. Certainly, if the court in the Phelps case found that the punches in the Phelps case was excessive and unreasonable then the punches by Officer Davis in this case would also be clearly excessive and unreasonable.

In another similar case, a police officer perceived that a Mr. Fultz to be attempting to strike a fellow officer. (*Fultz v Whittaker*, 187 F.2d 695 (2001). Two officers "scuffled" on the ground with Mr. Fultz eventually handcuffing him behind his back. Fultz at 699. The officers then pulled Mr. Fultz up and over to the police cruiser. Mr. Fultz alleged that they had him in a neck hold at that time. At the car Mr. Fultz kicked one of the officers near the groin according to officer Nuss. (*Fultz* at 700). Plaintiff Fultz, supported by other testimony, alleged that the officer who had him by the neck then wrenched or twisted Plaintiff's neck causing it to break. The court stated that "no reasonable police officer could believe that the law permits a police officer to purposefully wrench someone's neck in this manner, even under these circumstances." *Fultz* at 705. By this statement the court inferred that a reasonable officer would know that such behavior constituted an intent to cause serious injury or death. The court continued, stating as follows:

> It is clearly established that force intended to cause serious injury or death is unconstitutional unless necessary to apprehend a fleeing felon or if the suspect poses a threat to the safety of the officers or a danger to the community. Even if Plaintiff is deemed to have kicked Nuss in the groin, the handcuffs prevented him from posing any credible threat to the officers or others. Whitaker had many options other than deadly force. *Fultz* at 705.

In the *Fultz* case, the court was wrestling with two vastly different accounts of the force applied in assessing liability. The police in Fultz asserted that there was a bear hug,

not a neck hold and that Mr. Fultz's neck was broken when the legs of Mr. Fultz and the officer holding him became entangled and they fell to the ground together. *Fultz* at 700. In the Craddock case, there is no weighing of contradictory accounts-- the officers admit to the use of the extreme force! (See **Exhibit C** - Davis deposition, p.30 where he admits striking Mr. Craddock in the face while handcuffed and on the ground). These admissions are in addition to circumstances that in *Fultz* warranted a finding of no immunity on the part of the officers. Both the plaintiffs in these cases were handcuffed and, taking the facts in the light *least* favorable to Plaintiffs, kicking at officers while being held. Moreover, in *Fultz* the arrestee was standing, not face down on the ground like Mr. Craddock. In neither this case nor *Fultz* was the arrestee armed, reasonably capable of flight, or alleged to have attempted to flee. In fact, in the present case, Defendants acknowledge they were holding Mr. Craddock at the time of the alleged kick and that more officers were present outside when Mr. Craddock was lead from his residence. (**Exhibit J** - Vogt deposition, pp 22-23). In fact, Officer Vogt stated that he felt comfortable enough, given the presence of these other officers, to leave Mr. Craddock to get a car. (**Id**. at 23.) Officer Davis testified that they had "secured" Mr. Craddock at this time and he was flanked by two officers (**Exhibit C** - Davis deposition at pp. 18.) Given these circumstances, it is not particularly realistic for Mr. Craddock to be able to escape when his hands are tightly cuffed behind his waist.

The court in *Fultz* still found that even though the arrestee kicked at an officer, that, given the circumstances, Mr. Fultz posed no credible threat to the officers or others and found that the officers should have resorted to other, less injurious methods of restraint. In that case only two officers were present. This language is almost verbatim the

suggestions made by Plaintiff's expert Dr. Kirkham as noted above concerning the present case.  Thus, this court should find as a matter of law that the force administered to Mr. Craddock, blows to the face, is potentially deadly force as it found for neck holds and that such force was excessive given the extreme degree of similarity to the _Fultz_ facts.

As both the _Fultz_ and Phelps cases analyses demonstrate, in this case a constitutional violation has occurred of a clearly established right of which a reasonable officer would have known and Officer Davis' admitted actions in the circumstances were objectively unreasonable.  Therefore, this court should conclude that Officer Davis is not entitled to immunity.

### H.     Summary Judgment for Plaintiff on Fourth Amendment Grounds and Assault and Battery.

Taking the facts in the light most favorable to defendant Officer Davis there is no genuine issue of material fact on the excessive use of force claim and assault and battery claim.  Given the admissions by Officer Davis in light of the circumstances as described by other officers (circumstances which are far more egregious when taken in the light most favorable to Plaintiffs), summary judgment for Plaintiff should be granted and this case should proceed to trial only on damages.  Taken in the light *most favorable to Defendants* Officer Davis admits to punching Mr. Craddock in the face repeatedly while handcuffed behind his back and face down on the cement.  Other officers testify that when Mr. Craddock was tackled there were at least 3-4 officers on top of him and that he was kicking.  These circumstances are nearly identical, and, if anything, more egregious facts than in the _Fultz_ and _Phelps_ cases above.  In those cases the court found that no

reasonable police officer could believe the law permits such acts, that a person in such circumstances posed no credible threat to the officers, and no governmental interest existed to justify such a beating. (*Phelps* at 301 and *Fultz* at 705 supra).   Under the doctrine of <u>stare decisis</u> this court should make the same ruling.  The court has set forth the contours of this doctrine as follows:

> This rule requires courts to reach the same result when presented with the same or substantially similar issues in another case with different parties.   The identity of the questions presented is determined by a review of the facts and issues. Unless the facts are essentially different, <u>stare decisis</u> will apply to provide the necessary uniformity, predictability, and stability of the legal process. (See *Topps-Toeller, Inc. v City of Lansing*, 47 Mich App.720, 729 (1973) citing *Breckon v Franklin Fuel Co*, 383 Mich 251 (1970).  See also *U.S. v Schreiber*, 150 F.R.D. 106 (S.D. Ohio 1993), and *C.F. Medaris Co. v Comm'r of Internal Revenue*, 38 F.2d 812 (6th Cir. 1930).

Thus, the courts have found, as a matter of law, that given such circumstances Mr. Craddock is entitled to summary judgment on the Fourth Amendment claims of excessive force against Officer Davis.

Mr. Craddock is also entitled to summary judgment on his assault and battery claims against Officer Davis and a trial only on damages.  Assault requires either an intent to commit a battery or a reasonable apprehension of a battery.  An assault is "any intentional offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact. (*Espinoza v Thomas*, 189 Mich. App.110, 119 (1991)).  In this case Mr. Craddock testified from his vantage point on the ground, "all he could see was a fist coming in 3-D." (**Exhibit**

A - Craddock deposition, p 72, line 3). This constitutes an offer of force with a well-founded apprehension of imminent contact and an ability to follow through with it. Battery is defined as, "willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id*. at 119. Officer Davis has admitted such contact.

Therefore, no material issue of fact remains on these claims taking the evidence in the light most favorable to the non-moving party.

Furthermore, Plaintiff is entitled to attorney fees pursuant to 42 U.S.C. 1988 which gives the court discretion to award a reasonable attorney's fee to the prevailing party in civil rights violations cases under 42 U.S.C. 1983. (See also Zmija v Baron, 119 Mich App.524 (1982) and *Fisher v City of Memphis*, 234 F.3d 312 (2001).


III. **CONCLUSION** .

For the above reasons, Plaintiffs respectfully requests that this Court deny Defendant Davis' Motion for Summary Judgment under the 4th and 14th Amendments, conspiracy claims, and intentional infliction of emotional distress claim and instead grant Plaintiff Richard Craddock summary judgment under FRCP 56 on the 4th and 14th Amendment claims of excessive force and assault and battery claims leaving the residual claims and damages determinations to the jury.

-23-

SCHENK & BONCHER

DATED: July 24, 2003                By:  _____
                                         Catherine M. Sullivan (P40699)
                                         Brent W. Boncher (P64832)
                                         Attorneys for Plaintiffs
                                    Business Address:
                                         601 Three Mile Road, N.W.
                                         Grand Rapids, MI 49544-1601
                                         (616) 647-8277

C:\U\LS40\BWB\CRADDOCK\Response to MSJ.wpd

-24-